**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

James Michael Partridge,

       Plaintiff,

    v.                     Case No. 1:10cv627

City of Cincinnati,             Judge Michael R. Barrett

       Defendant.

**OPINION & ORDER**

This matter is before the Court on Plaintiff's Motion for Summary Judgment (Doc. 20) and Defendant's Motion for Summary Judgment (Doc. 15). These motions are fully briefed and are ripe for review.

**I.    BACKGROUND**

Plaintiff began working for the City of Cincinnati Water Works in 2001. (Doc. 14, James Partridge Dep. at 8.) On April 5, 2009, Plaintiff was promoted to the position of maintenance machinist. (Partridge Dep. at 22.) According to the Classification Specification for this position, an employee is required to complete a six-month probationary period. (Doc. 20, Ex. A.) The Classification Specification is set by the City's Civil Service Commission. (Id.)[1] Due to an error, Plaintiff's probationary period was

---

[1]According to the City's website:

The Civil Service Commission (CSC) is a three member, independent appellant board for classified civil service employees. Responsibilities of the Commission include: screening processes used for employee selection; the classification and minimum qualifications set for positions; review of personnel transactions such as transfers, reinstatements, provisional, emergency and exceptional appointments; and appellate functions for suspensions of more than 3 days, dismissals, demotions, layoff and medical separation.

thought to be only four months.  (Doc. 19, Denise Browning Dep. at 17-19.)  During this time, Plaintiff was first supervised by Ronald Lambert, and then Carl McMullen.  (Partridge Dep. at 40.)  In turn, Lambert and McMullen report to Mark Smith.  (Doc. 13, Mark Smith Dep. at 7.)

During his probationary period, Plaintiff received two "On-the-Job Training Reports" and a "Probationary Employee Progress Report."  (Docs. 11-4, 11-5, 11-6.)

The first Training Report was completed on May 5, 2009, and is signed by Lambert and Plaintiff.  (Doc. 11-5.)  The Report states: "one month is not enough time to assess his progress.  So far his work is okay."  (Id.)  The Report also states: "has trouble communicating with fellow employees . . . does not accept advise [sic] or take directions well."  (Id.)  The Report explains that Plaintiff can satisfactorily use hand tools, lathe, mill and drill press.  (Id.)  However, the Report states that Plaintiff "needs more practice time on jobs, equipment and crew leading," but that when "offered Mike to stay in shop and practice machine, he did not take advantage 3 times, made Mike stay 2 days and practice."  (Id.)

The second Training Report was completed on June 10, 2009, and is signed by Lambert and Plaintiff.  (Doc. 11-6.)  The Report states that Plaintiff has satisfactorily laid out jobs and set up precision machine operation, but "has trouble directing crew . . . has trouble maching [sic] . . . does not except [sic] advise [sic]."  (Id.)  Below Plaintiff's signature, is a note stating: "forced to sign in order to get copy under protest."  (Id.)

The Probationary Employee Progress Report was completed on June 11, 2009.

_____

http://www.cincinnati-oh.gov/cityhr/pages/-4279-/

(Doc. 11-4.)  The Report includes a checklist, which shows that Plaintiff was "Satisfactory" in two categories: (1) regular and prompt attendance and (2) doing as much work as expected.  (Id.)  Plaintiff was marked as "Needs Improvement" on the remaining categories: (1) getting along with other workers, (2) accepting criticism, (3) learning quickly and easily and (4) the expected quality of work.  Below Plaintiff's signature is a note stating: "forced to sign in order to get a copy under protest."  (Id.)

On July 13, 2009, Plaintiff underwent spinal surgery.  The City approved a period of leave beginning on June 29, 2009.  (Browning Dep., Ex. 19.)

In a letter dated July 14, 2009, the City informed Plaintiff that he had a "failure of probation" and would be returned to his former position of plant maintenance worker when he returned from leave.  (Doc. 11, Ronald Lambert Dep., Ex. 1.)  Enclosed with the letter was an "Annual Employee Performance Evaluation."  (Id.)  The Performance Evaluation is dated July 14, 2009.  (Id.)  The Evaluation includes seven categories, and an employee can be rated as "does not meet expectations," "meets expectations," or "exceeds expectations."  (Id.)  One of the seven categories–supervisory skill–was marked as not being applicable.  (Id.)  In the remaining six categories, Plaintiff was rated as meeting expectations in the categories of quantity of work and attendance.  Plaintiff did not meet expectations in quality of work, rules and regulations, interpersonal skills, and customer service delivery.  (Id.)  In each of these categories there is an explanation for the given rating.  (Id.)  The explanation includes comments such as (1) " . . . Mike was assigned jobs and critical mistakes were made."  (2) "Mike has a problem directing the work of his subordinates." (3) "does not accept/head advise [sic] from his supervisor on proper techniques." (4) "There have been multiple occasions where Mike did not follow standard

3

practices, procedures and policies with shop machinery." (5) "Mike is very unwilling to accept feedback from his supervisors." (6) "Mike has trouble getting along well with his co-workers." (Id.)  Plaintiff was given an overall rating of "does not meet expectations."  (Id.)

When Plaintiff returned from his leave, he was placed back into his former position. Plaintiff argues he was entitled to an additional ninety-eight days of the six-month probationary period.  Plaintiff claims that during that period of time, he could have proven that he was qualified for the maintenance machinist position.

## II.     ANALYSIS

### A.     Summary Judgment Standard

Federal Rule of Civil Procedure 56(a), as amended on December 1, 2010, provides that summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party has the burden of showing an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  Once the moving party has met its burden of production, the non-moving party cannot rest on his pleadings, but must present significant probative evidence in support of his complaint to defeat the motion for summary judgment.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).  The mere existence of a scintilla of evidence to support the non-moving party's position will be insufficient; the evidence must be sufficient for a jury to reasonably find in favor of the non-moving party.  *Id*. at 252.

### B.     FMLA

Plaintiff's sole claim is brought pursuant to the Family and Medical Leave Act of

4

1993 ("FMLA"), which entitles eligible employees to take up to twelve work weeks of unpaid leave annually for the onset of "a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). The FMLA provides that when an employee returns to work, the employee is entitled "to be restored by the employer to the position of employment held by the employee when the leave commenced;" or "to be restored to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment." 29 U.S.C. § 2614(a)(1)(A) and (B). Similarly, the FMLA provides that the taking of leave "shall not result in the loss of any employment benefit accrued prior to the date on which the leave commenced." 29 U.S.C. § 2614(a)(2).

Plaintiff has brought his claim under the FMLA based on the interference theory. The "interference," or "entitlement" theory as it is sometimes called, is derived from the FMLA's creation of substantive rights. *Arban v. West Pub. Corp*., 345 F.3d 390, 401 (6th Cir. 2003). If an employer interferes with the FMLA-created right to medical leave or to reinstatement following the leave, a violation has occurred. *Id.* (citing King v. Preferred Technical Group, 166 F.3d 887, 891 (7th Cir. 1999)).

For an interference claim, a plaintiff must establish: (1) he or she is an eligible employee for purposes of the Act; (2) the defendant is an employer subject to the FMLA's requirements; (3) the employee was entitled to FMLA leave benefits by virtue of meeting certain criteria; (4) the employee provided adequate notice of his or her intent to invoke FMLA leave benefits; and (5) the defendant denied the employee FMLA benefits to which the employee was entitled. *Wysong v. Dow Chemical Co.*, 503 F.3d 441, 447 (6th Cir. 2007) (citing Cavin v. Honda of Am. Mfg., Inc., 346 F.3d 713, 719 (6th Cir. 2003)).

5

The City argues that Plaintiff cannot satisfy the final element. The City cites the applicable regulations, which provide that "[a]n employee has no greater right to reinstatement or to other benefits and conditions of employment than if the employee had been continuously employed during the FMLA leave period." 29 C.F.R. § 825.216. Plaintiff argues that he had a right to a six-month probationary period, which was to be tolled while he was on leave. The City does not dispute that the probationary period for the maintenance machinist position is six months. (Doc. 6.) However, the City explains that while the Civil Service Commission may set the length of the probationary period, each department has the discretion to pass or fail an employee. The City also explains that it can fail an employee at any time. *See* Ohio Rev. Code 124.27 ("If the service of the probationary employee is unsatisfactory, the employee may be removed or reduced at any time during the probationary period."). The City states that Plaintiff failed probation due to his poor work performance.

"'[I]nterference with an employee's FMLA rights does not constitute a violation if the employer has a legitimate reason unrelated to the exercise of FMLA rights for engaging in the challenged conduct.'" *Grace v. USCAR*, 521 F.3d 655, 670 (6th Cir. 2008) (quoting Edgar v. JAC Prods., 443 F.3d 501, 507 (6th Cir. 2006)); *see also Arban*, 345 F.3d at 401 ("An employee lawfully may be dismissed, preventing him from exercising his statutory rights to FMLA leave or reinstatement, but only if the dismissal would have occurred regardless of the employee's request for or taking of FMLA leave.").[2] The Sixth Circuit has

---

[2]As one district court has recently noted:

Generally, the employee bears the burden of establishing, by a preponderance of the evidence, that he is entitled to the benefit he claims. *Arban*, 345 F.3d at 401.

held that where an employer proffers such a legitimate reason, "the employee, in order to establish the entitlement protected by § 2614(a)(1), must, in the course of establishing the right, convince the trier of fact that the contrary evidence submitted by the employer is insufficient and that the employee would not have been discharged . . . if he had not taken FMLA leave." *Arban*, 345 F.3d at 401 (quoting Rice v. Sunrise Express, 209 F.3d 1008, 1018 (7th Cir. 2000)).

While the City may have the discretion to end the probationary period at any time, there is a genuine issue of material fact as to whether the City would have ended Plaintiff's probationary period if Plaintiff had been given more time to improve his performance. This question is certainly complicated by the City's erroneous assumption that Plaintiff's probationary period was only four months long. To support its position that Plaintiff failed probation in this abbreviated period of time, the City relies on Plaintiff's Training Reports and Progress Report, along with the testimony of his supervisors. McMullen testified that Plaintiff was "very argumentative." (McMullen Dep. at 25.) McMullen also cited two

---

Where, as here, the benefit denied is reinstatement and the employer claims that the employee would have been discharged even if he had not taken leave, the regulations place the burden of proof on the employer. *See* 29 C .F.R. § 825.216(a) ("An employer must be able to show that an employee would not otherwise have been employed at the time reinstatement is requested in order to deny restoration to employment."). The Sixth Circuit has not directly addressed which party bears the burden of proof under these circumstances. The majority of circuits that have considered the issue, however, agree that the regulation validly shifts the burden of proof to the employer. *See Sanders v. City of Newport*, ⸺ F.3d ⸺, 2011 WL 905998, at *7 (9th Cir. Mar.17, 2011); *Smith v. Diffee FordLincoln–Mercury, Inc.*, 298 F.3d 955, 963 (10th Cir.2002); *Throneberry v. McGehee Desha Cnty. Hosp.*, 403 F.3d 972, 978–79 (8th Cir.2005); *Strickland v. Water Works & Sewer Bd. of City of Birmingham*, 239 F.3d 1199, 1208 and n.11 (11th Cir.2001).

*Winterhalter v. Dykhuis Farms, Inc.*, No. 1:10–CV–385, 2011 WL 2148524, *5 (W.D.Mich. May 31, 2011). This Court sees no reason to reach a different conclusion regarding the burden of proof.

instances where Plaintiff ruined the piece of work he was assigned to complete.  (Id. at 11-12, 13.)  However, McMullen also stated that it was his belief after completing the June 11 Progress Report, that things were not "hopeless" for Plaintiff, but that he had some things that he "probably need[ed] to work on."  (McMullen Dep. at 32-33.)

Moreover, Smith requested that Plaintiff's probationary period be extended so that Plaintiff could complete the full four months.  (Smith Dep. at 36.)  Denise Browning, who was the human resources liaison for the department, responded by asking Smith whether five or six days would make a difference in Plaintiff's performance.  (Id.)  Smith discussed the matter with Lambert and McMullen, and it was decided that another five or six days would not make a difference.  (Id.)  However, Smith was not sure how the five or six day calculation was made.  (Id.)

Employers cannot use the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions or disciplinary actions.  29 CFR § 825.220(c).  The Sixth Circuit has explained that this negative-factor analysis is applicable in analyzing an interference claim.  *Wysong v. Dow Chemical Co.*, 503 F.3d 441, 447 (6th Cir. 2007).[3] Accordingly, "[i]f an employer takes an employment action based, in whole or in part, on

---

[3]The Sixth Circuit explained that this iteration of the fifth element of an interference-theory claim was a proper rephrasing:

> Quoting a case from the U.S. District Court for the Southern District of Ohio, Wysong argues that the fifth element of an interference-theory claim is that the employer "somehow used the leave against her and in an unlawful manner, as provided in either the statute or regulations."  *Bradley v. Mary Rutan Hosp.*, 322 F.Supp.2d 926, 940 (S.D.Ohio 2004).  Although this language is different from the language used in *Cavin*, it does not conflict with *Cavin*, and, in fact, adds depth to the fifth element articulated in *Cavin*.

503 F.3d at 447.

the fact that the employee took FMLA-protected leave, the employer has denied the employee a benefit to which he is entitled." *Id.*

The City argues that it was not required to extend Plaintiff's probationary period because extensions are a matter of discretion under Rule 9, Section 1 of the Civil Service Commission Rules:

> If a probationary employee is absent because of illness for a substantial portion of his probationary period, the Commission *may* extend his probationary period by the number of working days not exceeding the length of time he was absent.

(Browning Dep., Ex. 18 (emphasis added).)  However, it is not clear whether the City did not extend the probationary period because his supervisors believed Plaintiff was incapable of improving his performance, or there was insufficient time to improve his performance.  Therefore, the Court finds that there is a genuine issue of material fact as to whether the City used Plaintiff's leave as a negative factor in the decision to not extend his probationary period.

Plaintiff has cited a number of cases to stand for the proposition that probationary time does not run while an employee is on FMLA.  *See*, *e.g.*, *Martin v. Brevard County*, 543 F.3d 1261 (11th Cir. 2008).  However, this Court cannot accept this proposition as a general rule.  Instead, what these cases have held is that based upon the factual record, there is a genuine issue of material fact as to whether the employees could have improved their performance if given additional time.  As the Eleventh Circuit explained:

> Martin contends that the School District interfered with his right to reinstatement by not renewing his contract.  In response, the School District argues that it terminated Martin for a reason wholly unrelated to his FMLA leave: failure to fulfill his improvement plan.  Even if that reason is true, however, the record does not establish beyond dispute that the School District would have discharged Martin had he not taken FMLA leave.  In fact,

the record is unclear: whether Martin would have been retained and his contract renewed if he had been able to complete the final three-plus weeks of his improvement plan is a matter of speculation.  Martin was unable to complete the plan as a result of his being-at least arguably-on proper FMLA leave.

543 F.3d at 1267 (footnotes omitted).  Likewise, in this instance, there is evidence on both sides of the ledger, and whether Plaintiff would have been able to satisfactorily complete the probation period is a matter of speculation.  Therefore, the Court concludes that neither party is entitled to summary judgment.

III.   **CONCLUSION**

_____Based on the foregoing, the Court it is hereby ORDERED that:

1.   Plaintiff's Motion for Summary Judgment (Doc. 20) is **DENIED**; and

2.   Defendant's Motion for Summary Judgment (Doc. 15) is **DENIED**.

**IT IS SO ORDERED.**

_____*/s/ Michael R. Barrett*_____
Michael R. Barrett, Judge
United States District Court

_____

10